**Reversed and Remanded and Opinion filed October 9, 2014.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-14-00072-CV

**MISSION PETROLEUM CARRIERS, INC., Appellant**

**V.**

**DAVID KELLEY, Appellee**

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-42639**

## O P I N I O N

Mission Petroleum Carriers, Inc. appeals from the trial court's denial of its motion to compel arbitration. In a single issue, Mission asserts that David Kelley ratified the arbitration agreement by accepting benefits under the plan, rendering any procedural unconscionability in the formation of the agreement moot. We agree, and we reverse and remand to the trial court for an order compelling the parties to arbitrate this dispute and to stay all proceedings pending the outcome of the arbitration.

## I. BACKGROUND

David Kelley was seriously injured in an 18-wheeler accident while working for Mission. Several days later, while Kelley was still in the hospital and on a morphine drip, a Mission representative arrived in his room with paperwork for him to sign. This paperwork authorized Kelley's participation in Mission's Health and Safety Plan (the H&S Plan), offered by Mission's parent company, Tetco, Inc. This H&S Plan provides benefits for workers who are hurt on the job, including medical care, rehabilitative care, wage replacement, dismemberment and permanent impairment benefits, and death benefits.

As part of the paperwork permitting him to participate in the H&S Plan, Kelley signed an election to participate in the plan and an arbitration acknowledgement (the Arbitration Agreement). By executing the Arbitration Agreement, Kelley agreed

> to submit to binding arbitration under the Federal Arbitration Act, the following claims or disputes: (I) all claims [of] Injury which occur as a result of an Accident, Occupational Disease or Cumulative Trauma, (II) all claims for death resulting from an Accident, Occupational Disease [or] Cumulative Trauma, (III) disputes regarding employment discrimination (including wrongful discharge) in relation to an Injury, and (IV) any disputes regarding administration of the Plan or Plan benefits.

Thereafter, Mission began providing benefits to Kelley under the H&S Plan.

Several months later, Kelley filed suit against Mission and a third party for negligence. In this suit, he alleged gross negligence and sought punitive damages. In response to Kelley's suit, Mission invoked the Arbitration Agreement in its answer and filed a motion to compel arbitration and to stay proceedings. Kelley opposed the motion to compel arbitration, asserting that he was under the influence of narcotic pain medication when he signed the Arbitration Agreement and did not

recall signing it. He alleged the agreement was procedurally unconscionable and asserted fraud in the inducement. He did not dispute that the Arbitration Agreement covered the claims for which he had filed suit.

He attached his own affidavit and an affidavit from his wife, Janisa, to his response. In his affidavit, Kelley stated, "I have little to no recollection of my time in the hospital. I do not remember signing any paperwork from Mission; specifically, the arbitration agreement. Further, I do not remember ever meeting with or seeing a Mission representative while I was in the hospital." Janisa averred that she had spent every day with Kelley while he was in the hospital. In her affidavit, she testified that Mission representative Christie Lawrence came to the hospital twice, bringing paperwork that Lawrence "insisted" Kelley sign. According to Janisa, "Christie Lawrence did not explain the contents other than saying it was for David's benefits." Janisa stated that Lawrence returned to the hospital a few days later and brought more paperwork and that Lawrence "stated that David must sign the paperwork to receive his health benefits from Mission. Christie [Lawrence] kept saying that the paperwork only dealt with benefits." Janisa averred, "Christie Lawrence never stated that David was signing an arbitration agreement." Janisa further stated that she "held the paperwork for David, held the pen in his hand, and helped him sign the papers."

The motion to compel arbitration was set for an evidentiary hearing. At this hearing, the trial court admitted Mission's affidavits from Christie Lawrence and Tetco's H&S Plan administrator Vickie Blackstock, along with a Transaction report and Payment Detail showing that Kelley directly or indirectly received benefits under the H&S Plan subsequent to his signing the Arbitration Agreement. In Blackstock's affidavit, she stated that, as of the day before the hearing, Mission had paid H&S Plan benefits either directly to or on behalf of Kelley in excess of

3

$88,000. Included in this amount was slightly over $29,500 paid on Kelley's behalf or to Kelley since his suit was filed. This amount included weekly payments to Kelley of about $935 from August 2, 2013 continuing up until the hearing was held. Based on this evidence, Mission asserted that Kelley had ratified the Arbitration Agreement.

In addition to the above described evidence, the trial court took judicial notice of the Kelleys' affidavits and the parties' briefing at the hearing. After hearing the argument of counsel, the trial court orally denied the motion to compel arbitration.

The trial court signed an order denying Mission's motion to compel on January 8, 2014. From the denial of its motion to compel, Mission timely filed this interlocutory appeal.[1]

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A party seeking to compel arbitration first must establish that the dispute in question falls within the scope of a valid arbitration agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If, as here, the other party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists. *Id.* We review de novo the trial court's determination of the arbitration agreement's validity. *Id.* The burden of proving a defense to arbitration is on the party opposing arbitration because the law favors arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding); *see also J.M. Davidson, Inc.*, 128 S.W.3d at 227.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (permitting interlocutory appeal of denial of motion to compel arbitration under Federal Arbitration Act); *see also* 9 U.S.C.A. § 16.

4

## III. RATIFICATION[2]

Here, Kelly does not dispute that the claims in question fall within the scope of the Arbitration Agreement; instead, he asserts that the agreement is procedurally unconscionable. In turn, Mission does not argue that the agreement is not procedurally unconscionable[3]; instead, it urges that, even if the agreement is procedurally unconscionable, Kelley's acceptance of benefits under the agreement with full knowledge that the agreement was not legally binding prohibits him from repudiating it. Specifically, Mission urges that Kelley ratified the Arbitration Agreement and thus any defenses, including procedural unconscionability, to the creation of the agreement are irrelevant. We must agree.

Ratification is the adoption or confirmation by a person, with knowledge of all material facts, of a prior act that did not legally bind that person and that the person had the right to repudiate. *In re Weeks Marine, Inc.*, No. 14-09-00580-CV, 2009 WL 3231570, at *3 (Tex. App.—Houston [14th Dist.] Oct. 8, 2009, orig. proceeding) (mem. op.). "Ratification may be express or implied from a course of conduct." *Id.* An act inconsistent with the intent to avoid a contract ratifies the contract. *Id.* Once a party ratifies a contract, he may not later withdraw his ratification and seek to avoid the contract. *Id.* The relevant inquiry focuses on the actions taken by the party seeking to avoid the contract once that party became

___

[2] For the first time on appeal, Kelley contended that section 1 of the Federal Arbitration Act (FAA) prevented Mission from including an arbitration agreement in its contract with him. This provision provides that the FAA does not apply to employment contracts of workers engaged in foreign or interstate commerce. *See* 9 U.S.C.A. § 1. However, during oral argument of this case, Kelley's counsel conceded that this section of the FAA does not apply to the agreement at issue and that we do not need to address this issue.

[3] Mission offered affidavit testimony disputing some of Kelly's evidence about the events at the hospital and whether Kelley was incapacitated at the time he signed the agreement. However, Mission wisely concedes, for the sake of argument, that the Mission course of conduct at the hospital outlined in Kelley's evidence, if believed, gives rise to procedural unconscionability.

fully aware that his prior act did not legally bind him. *Id.* A party cannot avoid an agreement by claiming there was no intent to ratify after he has accepted the benefits of the agreement. *Id.* Ratification may be determined as a matter of law if the evidence is not controverted or is incontrovertible. *Id.*

In *Weeks Marine*, an employee, Jose Jimenez, was injured while working on a dredging vessel for his employer, Weeks Marine. *Id.* at *1. Several days after Jimenez had surgery for his injuries, he signed an arbitration agreement in which he agreed to arbitrate any claims arising from his injury in exchange for Weeks Marine's agreement to pay him advanced wages. *Id.* Nearly two months later, Jimenez filed suit against Weeks Marine, alleging that his injuries were caused by Weeks Marine's negligence and the unseaworthiness of the vessel. *Id.* Weeks Marine requested that Jimenez submit his claims to arbitration pursuant to the agreement; when he refused to do so, Weeks Marine moved to compel arbitration. *Id.* The trial court denied Weeks Marine's motion to compel arbitration. *Id.* After an evidentiary hearing, the trial court found that Jimenez had received approximately $20,000 from Weeks Marine under the agreement. *Id.* at *4. It was further undisputed that Jimenez continued to receive and accept advanced wage payments under the terms of the agreement after he filed suit and after Weeks Marine sought to compel arbitration. *Id.* Jimenez "did not return any of those payments, even after he had hired an attorney and after Weeks Marine had formally requested arbitration." *Id.* This court concluded, "Even if the Agreement were unenforceable due to procedural unconscionability or duress, Jimenez ratified it by accepting and retaining the benefits of the Agreement." *Id.* We held that Jimenez could not avoid the agreement to arbitrate because he had accepted the advanced wage payments after becoming aware that the agreement was allegedly invalid due to procedural unconscionability or duress. *Id.* We determined that the

6

trial court abused its discretion by denying Weeks Marine's motion to compel arbitration. *Id.* at *5.

Here, as in *Weeks Marine*, there is undisputed evidence that Kelley received benefits under the H&S Plan containing the Arbitration Agreement after he retained an attorney and filed suit. Likewise, as in *Weeks Marine*, there is undisputed evidence that Kelley continued to receive H&S Plan benefits *after* Mission filed its motion to compel arbitration;[4] and there is no evidence that Kelley returned any of the payments made to him or on his behalf under the H&S Plan either after he filed suit or after Mission sought to compel arbitration. In short, Kelley cannot avoid the Arbitration Agreement because he has accepted benefits under the plan after he became aware that the agreement was allegedly invalid due to procedural unconscionablity. *See id.* at *4–5.

For the foregoing reasons, we sustain Mission's sole issue on appeal.

## IV. CONCLUSION

We hold that the trial court abused its discretion by denying Mission's motion to compel arbitration. Having sustained Mission's sole issue, we reverse the trial court's order denying Mission's motion to compel. We remand to the trial

---

[4] Kelley also claims on appeal that determining that he ratified the Arbitration Agreement would violate his due process right to "refuse to enter the arbitration contract." Here, however, Kelley chose to continue accepting benefits under the H&S Plan after he filed suit and after Mission sought to compel arbitration. Kelley cites no case, and we find none, that vests a party with the due process right to refuse to sign an agreement accompanied by a right to receive or retain benefits from the same agreement. And Kelley's offer to give Mission a credit for retained benefits after a jury trial is inconsistent with the very due process he seeks.

Finally, we are mindful that Kelley may have believed he faced little better than a Hobson's choice if he was unable to obtain necessary or desired medical care without the benefits of the H&S Plan. But Texas law does not allow this Court to relieve him of the repercussions of that choice once he possesses all the facts.

court for further proceedings consistent with this opinion, including ordering the parties to arbitration and the grant of an appropriate stay.[5]


/s/    Sharon McCally
       Justice


Panel consists of Justices McCally, Brown, and Wise.

---

[5] *See* 9 U.S.C.A. § 3 (requiring a trial court to stay proceedings upon application of one of the parties if the suit involves "any issue referable to arbitration under an agreement in writing for such arbitration). Here, as noted above, Mission sought to stay proceedings in its motion to compel arbitration.