

# NUMBER 13-16-00204-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**HENRY & SONS CONSTRUCTION CO., INC.,**                    **Appellant,**

**v.**

**PABLO CAMPOS,**                    **Appellee.**

---

### On appeal from the County Court at Law No. 2
### of Nueces County, Texas.

---

# OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Opinion by Justice Rodriguez

Appellee Pablo Campos was an employee of appellant Henry & Sons Construction Company, Inc. (HSC). Campos sued the company for personal injuries he allegedly sustained at the HSC worksite. HSC filed a motion to compel arbitration, which the trial court denied. This interlocutory appeal followed. By what we construe as four issues

on appeal, HSC contends that the trial court abused its discretion in denying HSC's motion to compel arbitration.   We affirm.

## I.   BACKGROUND

The facts of this appeal are largely undisputed.   Rather, the parties dispute the legal significance of an arbitration policy and whether HSC and Campos were mutually bound to adhere to that policy.

HSC is a non-subscriber to the Texas Workers Compensation Act.   In 2005, HSC promulgated a Dispute Resolution Policy which went into effect on January 1, 2006 (the Policy).   The Policy specified that it covered all disputes arising out of the employee's relationship with HSC, including tort claims for negligence or gross negligence and any claims related to on-the-job injuries or illnesses.   The Policy indicated that by beginning or continuing employment with HSC after January 1, 2006, the employee agreed to arbitrate any disputes with HSC under the Federal Arbitration Act (FAA).   According to the Policy, the employee thus waived any right to seek a remedy outside of the arbitration procedure established by the Policy; it required an employee to complete a three-step grievance procedure and then file a request for arbitration, taking each step within fourteen days of the prior step—or else forfeit any claim.   The Policy stated that HSC's employees agreed to binding arbitration in "exchange for HSC's agreement to resolve employment disputes with [the employee] under the terms and conditions of this Policy, and as a condition of continued employment . . . ."   Employees were required to sign and return an "Employee Acknowledgment" form within five business days after receiving the Policy.

2

Campos signed and returned an Employee Acknowledgement form on August 26, 2013, though the record does not reveal when he began his employment with HSC. It is undisputed, however, that Campos was injured while he was an employee of HSC in 2014. He filed this suit in 2015. Shortly thereafter, HSC filed a motion to compel arbitration. In its motion, HSC argued that the Policy was enforceable as a binding arbitration agreement, to which Campos had assented by beginning or continuing his employment with HSC after the Policy's effective date. HSC argued that under the terms of the Policy, the parties were required to arbitrate any tort claims for negligence and any claims related to on-the-job injuries.

In his response, Campos raised several arguments to resist arbitration. Among them, Campos cited a section in the Policy which allowed HSC to modify or terminate the Policy at its sole discretion. According to Campos, the following language allowed HSC to avoid its promise to arbitrate by modifying or terminating the arbitration arrangement:

**G. REVISIONS TO OR TERMINATION OF THIS POLICY**

(1) . . . If HSC determines that revisions are necessary, you will be provided with a copy of the revised Policy indicating the effective date, and you will be asked to sign an Employee Acknowledgement reflecting that you received the new Policy. Revisions to this Policy shall only apply prospectively. In other words, revisions will apply only to those claims based upon actions or events that occur following the effective date of the revisions. Unless all parties to an arbitration proceeding agree otherwise[,] revisions to this Policy shall not apply to any arbitration proceeding that exists as of the time that the revised Policy is issued.

(2) If HSC decides to terminate this Policy, such termination shall terminate both HSC's and your right to arbitrate under this Policy. HSC shall provide at least thirty (30) days['] notice of any termination of the Policy. Any claim based upon actions or events that occurred or any proceeding under this Policy that was initiated prior to the effective date of

3

the termination of the Policy shall not be affected by such termination, unless all parties agree otherwise.

Campos argued that because the employer's promise to arbitrate was avoidable and non-binding, the promise could not serve as valid consideration for a contract. Campos reasoned that because any consideration was "illusory," the Policy was not an enforceable arbitration agreement as a matter of Texas contract law.

On January 14, 2016, the trial court conducted a hearing on HSC's motion to compel arbitration. Shortly afterwards, the trial court denied the motion. HSC filed this appeal.

## II. PROMISE TO ARBITRATE AS CONSIDERATION

By its first issue on appeal, HSC contends that two features save the Policy from being considered "illusory" as a binding arbitration agreement. First, HSC asserts that the Policy required HSC to provide thirty days' notice of its intent to modify or terminate the Policy—though Campos disputed this conclusion, arguing that the Policy did not guarantee any prior notice of modifications. Second, HSC contends that the Policy provided that any modification or termination would only apply "prospectively." According to HSC, these guarantees to notice and prospective-only application prevent HSC from avoiding its promise to arbitrate by quickly modifying or terminating the Policy.

To address this argument, we must first determine the minimum requirements for an enforceable agreement based on a mutually binding promise to arbitrate. We then evaluate whether the Policy meets those requirements.

## A. Standard of Review and Applicable Law

The Texas Civil Practice and Remedies Code permits the interlocutory appeal of

4

an order denying a motion to compel arbitration under the Federal Arbitration Act. TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West, Westlaw through 2015 R.S.); *Flex Enters. LP v. Cisneros*, 442 S.W.3d 725, 727 (Tex. App.—El Paso 2014, pet. denied). A party seeking to compel arbitration must first establish the existence of a valid arbitration agreement between the parties. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding). Whether an enforceable arbitration agreement exists is a question of law that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). "Once a party seeking to compel arbitration establishes that an agreement exists under the FAA, and that the claims raised are within the agreement's scope, the trial court has no discretion but to compel arbitration and stay its proceedings pending arbitration." *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) (internal quotations omitted).

"Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding). "Like other contracts, arbitration agreements must be supported by consideration." *DR Horton, Inc. v. Brooks*, 207 S.W.3d 862, 867 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding); *see Labor Ready Cent. III, LP v. Gonzalez*, 64 S.W.3d 519, 522 (Tex. App.—Corpus Christi 2001, orig. proceeding) (providing that "[a] contract that lacks consideration lacks mutuality of obligation," an element of contract formation). The only consideration required of both parties to create a stand-alone arbitration agreement is a binding promise of each party. *In re*

5

*AdvancePCS Health LP*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam) (orig. proceeding).

When illusory promises are the only consideration that supports a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam) (orig. proceeding). A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex. 1994). If an employer can unilaterally modify or terminate the purported agreement, without prior notice to an employee, that agreement is based upon an illusory promise and thus not enforceable. *In re C & H News Co.*, 133 S.W.3d 642, 647 (Tex. App.—Corpus Christi 2003, orig. proceeding). In such situations, once the employer receives notice of a claim, the employer could avoid its promise to arbitrate by modifying or terminating the agreement, and thus "unilaterally nullify the arbitration agreement." *See In re Lucchese, Inc.*, 324 S.W.3d 214, 217 (Tex. App.—El Paso 2010, orig. proceeding). The employees would have "received nothing of value for their promises to arbitrate employment related disputes;" because the arbitration agreement would not be mutually binding, it would therefore be illusory and unenforceable. *Id.*

"This is not to say, however, that if a party retains any ability to terminate the agreement, the agreement is illusory." *Nelson v. Watch House Intern., LLC*, 815 F.3d 190, 193 (5th Cir. 2016) (internal quotations omitted). In the seminal *Halliburton* case, the Texas Supreme Court upheld an arbitration agreement which could be changed at the employer's sole discretion, concluding that two critical features saved the agreement

6

from being illusory. *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002) (orig. proceeding). The court emphasized the agreement's provisions that "no amendment shall apply to a Dispute of which the [employer] had actual notice on the date of amendment" and "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id.* Based on the guarantees of reasonable prior notice and prospective-only application,[1] the *Halliburton* court held that the employer could not "avoid its promise to arbitrate by amending the provision or terminating it altogether." *Id.* at 570; *see JM Davidson*, 128 S.W.3d at 228.[2]

Thus, where an arbitration clause is subject to unilateral modification or termination, such agreements are upheld as binding under *Halliburton* when they feature guarantees to prior notice and no retroactive application. *See, e.g., Odyssey Healthcare*, 310 S.W.3d at 424 (providing for fourteen days' notice and that any modification was inapplicable to arbitrations already filed); *Nabors Drilling USA, LP, v. Pena*, 385 S.W.3d 103, 109 (Tex. App.—San Antonio 2012, pet. denied) (same, with ten days' notice); *In re Champion Techs., Inc.*, 222 S.W.3d 127, 131 (Tex. App.—Eastland 2006, pet. denied) (same, with thirty days' notice); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 616 (Tex.

---

[1] We describe this guarantee, interchangeably, as a guarantee to prospective-only application and a guarantee against retroactive application.

[2] An unrestrained right to modify the agreement may just as readily be used to avoid a promise to arbitrate as an unrestrained right to terminate the agreement. *See, e.g., Temp. Alts., Inc. v. Jamrowski*, __S.W.3d__, No. 08-13-00166-CV, 2014 WL 2129518, at *1 (Tex. App.—El Paso May 21, 2014, no pet.) (applying the rule of *Halliburton* and its progeny to an arbitration agreement which could be modified, but not terminated, at the employer's sole discretion). As this Court has held in finding an arbitration agreement to be illusory, "[T]he purported arbitration agreement allows relator to unilaterally *amend* the terms of the handbook, and in so doing, allows relator to unilaterally *amend* the types of claims subject to arbitration. Thus, relator retains the ability to pick and choose the claims its wants to arbitrate." *In re C & H News Co.*, 133 S.W.3d 642, 647 (Tex. App.—Corpus Christi 2003, no pet.) (emphasis added).

App.—Houston [1st Dist.] 2002, orig. proceeding) (same, with ten days' notice).

Conversely, courts have found that agreements which lack both features are not mutually binding and, therefore, are unenforceable under Texas law. *See, e.g.*, *C & H News*, 133 S.W.3d at 647; *Nelson*, 815 F.3d at 193–94; *Lizalde v. Vista Quality Mkts.*, 746 F.3d 222, 226 (5th Cir. 2014).

But courts have had fewer occasions to consider arbitration agreements which feature one *Halliburton* guarantee but not the other—that is, either prior notice or prospective-only application, but not both. *See Temp. Alts., Inc. v. Jamrowski*, __S.W.3d__, __, No. 08-13-00166-CV, 2014 WL 2129518, at *2 (Tex. App.—El Paso May 21, 2014, no pet.). "The Texas Supreme Court has not explicitly defined the minimum requirements of an arbitration savings clause . . . under *Halliburton*." *Id.* Those courts which have addressed this issue have generally concluded that one guarantee without the other will not save an arbitration agreement from being illusory. For instance, the Dallas Court of Appeals has found an agreement illusory because it did not guarantee prospective-only application of any modification or termination, even though it guaranteed some form of notice—albeit a weak one, allowing contemporaneous notice to suffice rather than requiring prior notice. *See Weekley Homes, LP v. Rao*, 336 S.W.3d 413, 421 (Tex. App.—Dallas 2011, pet. denied). Likewise, when applying Texas law, the Fifth Circuit and the California Court of Appeals have found agreements to be illusory under Texas law because the agreements did not guarantee prospective-only application, even though they guaranteed some form of notice. *See Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 204 (5th Cir. 2012) (contemporaneous notice); *Torres*

8

*v. SGE Mgmt., LLC*, 397 Fed. Appx. 63, 68 (5th Cir. 2010) (contemporaneous notice); *Morrison v. Amway Corp.*, 517 F.3d 248, 257 (5th Cir. 2008) (contemporaneous notice); *Peleg v. Neiman Marcus Grp., Inc.*, 140 Cal.Rptr.3d 38, 63–64 (Cal. App. [2nd] 2012) (thirty days' notice). On the other end of the spectrum, the El Paso Court of Appeals has found an arbitration agreement to be illusory because it did not guarantee prior notice, even though it contained a strong guarantee against retroactive application to any *injury* which had already occurred, rather than a standard *Halliburton* guarantee: that any modification or termination would not affect *arbitrations* which have already been filed. *See Lucchese*, 324 S.W.3d at 217; *see also In re Datamark, Inc.*, 296 S.W.3d 614, 618 (Tex. App.—El Paso 2009, orig. proceeding) (same, but with standard *Halliburton* guarantee to prospective application).

In view of these cases, the Fifth Circuit has recently "articulated a simple, three-prong test to determine whether a *Halliburton*-type savings clause sufficiently restrains an employer's unilateral right to [modify or] terminate its obligation to arbitrate." *Nelson*, 815 F.3d at 193–94. As interpreted by the Fifth Circuit, Texas law provides that retaining modification or termination power "does not make an agreement illusory so long as that power (1) extends only to prospective claims, (2) applies equally to both the employer's and employee's claims, and (3) so long as advance notice to the employee is required before termination [or modification] is effective." *Id.* at 194 (quoting *Lizalde*, 746 F.3d at 226).

We believe that the Fifth Circuit has correctly assessed Texas law: where promises are to serve as the consideration for an arbitration agreement, the promise to

arbitrate must remain mutually binding,[3] with any modification or termination power subject to both advance notice and prospective application. *See id.*; *AdvancePCS*, 172 S.W.3d at 607.

**B.    Application**

   1.    Prior Notice

Here, the savings clause contained in the Policy does not guarantee prior notice of the employer's intention to modify the arbitration agreement:   "If HSC determines that revisions are necessary, you will be provided with a copy of the revised Policy indicating the effective date, and you will be asked to sign an Employee Acknowledgement reflecting that you received the new Policy."   Under the terms of the Policy, contemporaneous or even retroactive notice would fully satisfy HSC's obligations.   This does not comport with Texas's requirement that the arbitration agreement must guarantee advance notice of any intended modifications.   *See Halliburton*, 80 S.W.3d at 569–70; *Nelson*, 815 F.3d at 194.

Nonetheless, HSC points out that, under a separate section, it is required to give thirty days' notice before any *termination* of the Policy.   HSC contends that the advance notice provided by the termination section also applies to modification.   We disagree. By its plain terms, the section containing the thirty-day notice provision applies only to

---

[3] To say that an arbitration agreement must be "equally binding" is generally correct, but might suggest that the obligation to arbitrate must be identical as to each party.   This is contrary to our cases, which have held that to a limited extent, the arbitration agreement may exclude certain classes of claims from arbitration without rendering an arbitration agreement illusory.   *See*, *e.g.*, *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex. App.—San Antonio 2000, pet. denied) (upholding an agreement which excluded from arbitration certain claims for injunctive relief by the employer, but not the employee); *see also In re AdvancePCS Health LP*, 172 S.W.3d 603, 608 n.6 (Tex. 2005).   The Texas Supreme Court has preferred the term "mutually binding."   *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 506 (Tex. 2015).

"termination." "Modification" is addressed in a separate section, which provides only that the employee "will be provided with" a copy of the modified arbitration policy—at some point. Under general principles of contract interpretation, we "seek to give effect to all provisions so that none will be meaningless," and we attribute the ordinary and generally-accepted meaning to terms unless the policy shows the words are meant in a technical or different sense. *Gilbert Tex. Const., LP v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). HSC does not direct our attention to any provision in the Policy which suggests that "termination" was used in a technical or different sense which embraces all "modification." *See id.* Rather, the contract separately sets out HSC's power to modify and its power to terminate in different sections using different language, which suggests that HSC itself considered these to be distinct terms with distinct meanings. We will not adopt HSC's interpretation, which would render meaningless the Policy's distinctive word choice and section structure. *See id.* We conclude that the Policy does not guarantee advance notice of any modification to the terms of the Policy. *See Halliburton*, 80 S.W.3d at 569–70; *Nelson*, 815 F.3d at 194.

2.      Prospective Application

As to the second *Halliburton* guarantee, the Policy states that modifications to the Policy "shall only apply prospectively. In other words, revisions will apply only to those claims based upon *actions or events* that occur following the effective date of the revisions." (Emphasis added). If the qualifying "actions or events" only included the underlying injury, then this stronger guarantee to prospective application might help prevent HSC from avoiding its obligation to arbitrate. However, it could also be said that

11

the filing of the arbitration petition is an action or event upon which a claim is based. The next sentence in the Policy—that "revisions to this Policy shall not apply to any *arbitration proceeding* that exists as of the time that the revised Policy is issued"—lends support to this interpretation. (Emphasis added). Under this reading, the Policy does not clearly provide any greater protection than an ordinary *Halliburton* guarantee: that modifications shall not apply to any arbitration proceeding which has already been filed. *See* 80 S.W.3d at 569–70; *cf. Cappadonna Elec. Mgmt. v. Cameron Cnty.*, 180 S.W.3d 364, 370 (Tex. App.—Corpus Christi 2005, no pet.) (orig. proceeding) ("The parties' agreement to arbitrate must be clear."); *Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2002, no pet., orig. proceeding) (same).[4]

### 3.     Conclusion:   Not Mutually Binding

In the absence of any guarantee to advance notice, we cannot conclude that this agreement is mutually binding, *see Nelson*, 815 F.3d at 194, which is a fundamental element of any enforceable contract under Texas law. *See Labor Ready Cent.*, 64 S.W.3d at 522. The prospective-application clause alone does not save the arbitration agreement from being illusory under *Halliburton.* *See* 80 S.W.3d at 569–70; *Nelson*, 815 F.3d at 194. HSC retains a right to "unilaterally nullify the arbitration agreement," and "the employees have received nothing of value for their promises to arbitrate employment related disputes." *See Lucchese*, 324 S.W.3d at 217. "[O]nce a claim arises, the forum in which that claim will be decided hinges not on mutually binding promises, but on a race

---

[4] As a more general matter, HSC also argues that Texas law expresses a "strong presumption favoring arbitration." However, the presumption favoring arbitration "arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005); *JM Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

between employer and employee, with the party who acts first controlling the outcome." *See Temp. Alts.*, __S.W.3d at __, 2014 WL 2129518, at *5. We conclude that HSC's promise to arbitrate under the Policy is not mutually binding, and it cannot support an enforceable agreement. *See JM Davidson*, 128 S.W.3d at 228; *Halliburton*, 80 S.W.3d at 569–70; *see also Nelson*, 815 F.3d at 194. We overrule HSC's first issue.

### III. RATIFICATION OR ALTERNATIVE CONSIDERATION

By what we construe as its second issue, HSC also argues that even if the Policy was based on illusory consideration, then a binding arbitration agreement was created by another document: the Employee Injury Benefit Plan (the Benefit Plan). This document provided for the creation of an ERISA plan which offered benefits to HSC's employees in the event of a work-related injury. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). The terms of the Benefit Plan made reference to the Policy's arbitration system. Given these references to arbitration, HSC argues that when Campos accepted medical and lost income benefits under the Benefit Plan after he was injured, he thereby entered into a binding arbitration agreement under the Policy.

It is undisputed that the terms of the Benefit Plan mention arbitration under the Policy, and we further note that the Policy appears to refer to the Benefit Plan. The Policy states that claims under ERISA and "claims for benefits under any of HSC's employee benefit plans governed by ERISA" are not subject to arbitration under the Policy. Likewise, the Benefit Plan states as follows:

> 2.  Arbitration of Employment Disputes: All Employees have agreed to submit all employment-related disputes to binding arbitration under the [Policy]. While many potential disputes are covered by the

13

[Policy], not all disputes that may arise in the context of the [Benefit] Plan are subject to mandatory arbitration.

    a.      Disputes related to a work-related Injury are covered by the [Policy].

    b.      Disputes related to a Claim For Benefits under the [Benefit] Plan are not subject to mandatory arbitration under the [Policy], unless the Participant voluntarily submits such a claim to the guidelines of the [Policy] with the Company's agreement. Details on how to subject a Claim For Benefits to arbitration under the [Policy] are available in the [Policy].

HSC argues this point in two ways: because each document refers to the other, (1) Campos ratified the Policy by accepting benefits under the related Benefit Plan, or (2) the benefits received under the Benefit Plan served as consideration for the Policy. In either event, HSC contends, Campos is bound to arbitrate his claim.

In support of its arguments, HSC cites *Mission Petroleum Carriers, Inc. v. Kelley*, 449 S.W.3d 550, 554 (Tex. App.—Houston [14th Dist.] 2014, no pet.) and *In re Weeks Marine, Inc.*, No. 14–09–00580–CV, 2009 WL 3231570, at *3 (Tex. App.—Houston [14th Dist.] Oct. 8, 2009, orig. proceeding) (mem. op.). These cases define ratification as "the adoption or confirmation by a person, with knowledge of all material facts, of a prior act that did not legally bind that person and that the person had the right to repudiate." *Mission Petroleum*, 449 S.W.3d at 553 (citing *Weeks Marine*, 2009 WL 3231570, at *3); *see Formosa Plastics Corp., USA v. Kajima Intern., Inc.*, 216 S.W.3d 436, 456 (Tex. App.—Corpus Christi 2006, pet. denied). "Ratification may be express or implied from a course of conduct." *Mission Petroleum*, 449 S.W.3d at 553; *see Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 329 (Tex. App.—Corpus Christi 2012, pet. denied) ("[I]f a party by its conduct recognizes a contract as valid, having knowledge of all relevant facts, it ratifies

14

the contract."). The relevant inquiry focuses on the actions taken by the party seeking to avoid the contract once that party became fully aware that his prior act did not legally bind him. *Mission Petroleum*, 449 S.W.3d at 553; *see Formosa Plastics*, 216 S.W.3d at 456.

In *Mission Petroleum* and in *Weeks Marine*, an employee was injured in the scope of employment and the employer then offered to provide benefits. *Mission Petroleum*, 449 S.W.3d at 554 (citing *Weeks Marine*, 2009 WL 3231570, at *4). In each case, the benefits were provided in an agreement which also contained an arbitration clause. *Id.* Each employee signed such an agreement but later sought to avoid arbitration. *Id.* The Houston Court of Appeals noted that each employee had signed an agreement containing an arbitration clause, had accepted the benefits provided by that agreement, and had not returned the benefits at any point. *Id.* The court found that even if the agreements were originally unenforceable, the plaintiffs had ratified them by "accepting and retaining the benefits of" the agreements. *Id.*

However, these cases are distinguishable. Unlike *Mission Petroleum* and *Weeks Marine*, the arbitration provision here is not a clause within a contract which relies on injury benefits as consideration. *See id.* Here, the Policy—which HSC argues is the source of an arbitration agreement—is a separate document from the Benefit Plan, under which Campos allegedly received benefits. The Policy does not rely on the Benefit Plan as consideration; instead, the Policy states that it is entered in "exchange for HSC's agreement to resolve employment disputes with you under the terms and conditions of this Policy, and as a condition of continued employment . . . ."

15

It is true that the Policy and the Benefit Plan do refer to one another. But these references do not favor HSC's argument. The Policy expressly states that claims under ERISA and "claims for benefits under any of HSC's employee benefit plans governed by ERISA" are not subject to arbitration under the Policy. Likewise, the Benefit Plan states that disputes "related to a Claim For Benefits under the [Benefit] Plan are not subject to mandatory arbitration under the [Policy] . . . ." Contrary to HSC's assertion, the clear thrust of each document is that a claim for benefits under the Benefit Plan does not subject the claimant to binding arbitration under the Policy.

Rather than *Mission Petroleum* and *Weeks Marine*, this situation more closely resembles *Big Bass Towing Company v. Akin*. *See* 409 S.W.3d 835 (Tex. App.—Dallas 2013, no pet.). In *Bass Towing*, an employer argued that the medical and indemnity benefits that an employee had received under a company's "Employee Injury Benefit Plan" were "part of the consideration" for a separate arbitration agreement. *Id.* at 840. The Dallas Court of Appeals rejected this argument, citing several incompatible aspects of the benefit plan and the arbitration agreement—aspects which are also shared by the Benefit Plan and the Policy in this case. *See id.* There, as here, the arbitration agreement stated that it did not apply to claims for benefits under the "employee injury benefit plan." *See id.* There, as here, the "benefit plan [did] not contain an arbitration clause, but it [did] reference arbitration in a few sections." *See id.* There, as here, the provisions referring to arbitration did not require any claim for benefits to be subject to binding arbitration. *See id.* The *Bass Towing* court ultimately found that because of the limited relationship between these two separate documents—and indeed, the provisions

16

which made the arbitration rules of one document inapplicable to the benefits received under the other—acceptance of medical benefits under the benefit plan was not consideration under the arbitration agreement. *See id.* For the same reasons, we reach the same conclusion as to the Benefit Plan and the Policy here.

We apply the same reasoning to conclude that HSC has not established a ratification. Because of the limited relationship between these two documents, there is no reason to conclude that when Campos accepted benefits under the Benefit Plan, his "conduct recognize[d]" the Policy as a valid contract. *See Ohrt*, 398 S.W.3d at 329; *see also Mission Petroleum*, 449 S.W.3d at 553; *Bass Towing*, 409 S.W.3d at 840. We conclude that Campos's acceptance of health and lost income benefits was neither ratification nor consideration for a binding arbitration agreement under the Policy. We overrule HSC's second issue.

## IV. ENFORCEABILITY DECIDED BY THE ARBITRATOR

By its third issue, HSC argues that under the terms of the Policy, the question of whether the Policy was enforceable or whether a dispute was arbitrable should have been decided by the arbitrator. HSC argues that the trial court therefore erred by impliedly reaching the question of enforceability when it denied HSC's motion to compel arbitration. However, our review of the record reveals that HSC did not bring this argument before the trial court. HSC thus waived this issue for appellate review. *See* TEX. R. APP. P. 33.1.[5]

---

[5] *See also Tech. in P'ship, Inc. v. Rudin*, 538 Fed. Appx. 38, 40 (2d Cir. 2013) (summary order) (holding that arbitrability is "subject to forfeiture if not raised in a timely fashion"); *Arauz v. Carnival Corp.*, 466 Fed. Appx. 815, 817 (11th Cir. 2012) (per curiam) (declining to consider FAA arbitrability argument raised for first time on appeal); *Liberty Mut. Ins. Co. v. Mandaree Pub. Sch. Dist. #36*, 503 F.3d 709, 713

## V.     MANDATORY STAY

By its fourth issue, HSC contends that in the event that this case proceeds to arbitration following this appeal, a stay is mandatory.   We have not sustained any of HSC's issues so as to require this case to proceed to arbitration, and so we need not consider this issue.   *See* TEX. R. APP. P. 47.1.

## VI.     CONCLUSION

We affirm the order of the trial court denying HSC's motion to compel arbitration.


NELDA V. RODRIGUEZ
Justice

Dissenting Opinion by Justice Perkes.

Delivered and filed the
6th day of October, 2016.

---

(8th Cir. 2007) (noting that, where appellant argued for the first time on appeal that an arbitrator had right to decide arbitrability, this argument was "untimely"); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 338 n.5 (5th Cir. 2004) (discussing Court's discretion to decline to address the enforceability of an arbitration agreement, which was raised for the first time on appeal).