

# NUMBER 13-18-00063-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**HEB GROCERY COMPANY L.P.,**                                                   **Appellant,**

**v.**

**YOLANDA PEREZ,**                                                               **Appellee.**

---

### On appeal from the County Court at Law No. 1
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Perkes
### Memorandum Opinion by Justice Hinojosa

In this accelerated appeal, Appellant HEB Grocery Company LP (HEB) seeks to reverse the trial court's denial of its motion to compel arbitration. We reverse and remand.

## I.  BACKGROUND

Appellee Yolanda Perez applied for employment with HEB online.   In its online application, HEB set forth the following "Agreement to Arbitrate":

> HEB and I hereby agree to submit any controversy or claim arising out of or relating to my hiring, employment, benefits, and/or separation of employment or any occupational or on-the-job injury/illness to, and resolved exclusively by, final and binding arbitration under the Federal Arbitration Act (FAA).

This "Agreement to Arbitrate" is referred to in the record as Exhibit D-5.   Exhibit D-5 does not have a "yes" or "no" button marked.   In Perez's online work application, however, marked as Exhibit D-2 in the record, HEB later asks potential employees the following question:

> I understand and agree to the "General Agreement", "Agreement to Arbitrate", "Electronic Signature" and "Additional Agreements" as stated in the H-E-B Employment Application.

Perez answered "yes" to this question.   HEB Human Resources Technology Advisor Chris Shaver further explained these documents, testifying by affidavit as to the following:

> Exhibit D-5 is a screen capture of the Agreements presented to the prospective partner when completing the electronic H-E-B Employment Application . . . . YOLANDA PEREZ was required to view Exhibit D-5 before she could confirm her acceptance of this agreement to arbitrate by responding "Yes" on her employment application (See Exhibit D-2).   The "Yes" on Exhibit D-2 could not be provided without first having an opportunity to review Exhibit D-5.

On February 10, 2013, while working at the cash register, Perez allegedly slipped and fell on some water leaking from a Coca-Cola cooler.[1]   Perez claims she suffered serious bodily injuries due to this accident.   Following this workplace injury, on February

---

[1] Coca Cola Refreshments USA, Inc. is a co-defendant in the underlying lawsuit but not a party to this appeal.

2

26, 2013, Perez signed and dated a document entitled "Authorization for Medical Information and Acknowledgment of Arbitration Election Process Form." By signing this form, Perez acknowledged that, "[i]f I have elected comprehensive coverage, or was hired after 2/21/05, I confirm my agreement to arbitrate disputes relating to my injury." Perez later accepted $11,460 in benefits under the HEB Work Injury Benefit Plan. When she accepted these benefits, she again agreed to be bound by arbitration. The Work Injury Benefit Plan provides that "any actual payment of benefits under this Plan to or with respect to you will serve as further consideration for and represent further agreement to the provision of this arbitration requirement."

On January 16, 2015, nearly two years after her work accident, Perez sued HEB for her alleged on-the-job injuries. In its Original Answer filed on February 13, 2015, HEB generally denied all allegations and asserted that "this cause must be submitted to final binding arbitration in accordance with Plaintiff's written agreement to arbitrate all disputes, claims, and/or controversies." HEB then filed a Motion to Compel Arbitration and Stay All Proceedings on March 23, 2015, but it was not set for hearing until December 14, 2015. HEB agreed to reschedule this hearing date upon Perez's request. In a Rule 11 Agreement, Perez agreed to withdraw all of her discovery requests and allow HEB to participate in Coca Cola's deposition of Perez if HEB agreed to pass its motion to compel arbitration hearing. The Rule 11 further stipulated that this agreement between the parties would "not be a waiver of the arbitration agreement."

The case, however, was not resolved. HEB did not propound any discovery in the case or seek any affirmative relief from the trial court during the pendency of this case.

3

The hearing on HEB's motion to compel was finally heard on January 22, 2018—nearly three years after Perez filed her lawsuit and a month before the scheduled trial.

The trial court, finding the lack of a "yes" or "no" answer on Exhibit D-5 to be significant, held that there was no clear indication that Perez agreed to arbitration and denied HEB's motion to compel arbitration. HEB then filed this accelerated appeal. *See* TEX. R. APP. P. 26.1(b).

## II. STANDARD OF REVIEW

In general, appellate courts review the trial court's denial of a motion to compel arbitration for abuse of discretion. *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 800 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Okorafor v. Uncle Sam & Assocs., Inc.,* 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). However, "[w]hen an appeal from a denial of a motion to compel arbitration turns on a legal determination . . . . we apply a de novo standard." *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 55 n. 9 (Tex. 2008).

## III. ANALYSIS

### A. Perez Agreed to Arbitrate in Her Employment Agreement

By its first issue, HEB claims that Perez agreed to arbitrate when she completed her employment agreement. Perez disagrees, averring that the online employment application did not have "yes" marked on the agreement to arbitrate or bear her signature, and that the application did not meet the requirements of the Texas Statute of Frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a)(1)-(2).

4

### 1.  Signature on Agreement to Arbitrate

"A signature, electronic or otherwise, is generally deemed to be sufficient to show assent to an arbitration agreement." *Alorica v. Tovar*, 569 S.W.3d 736, 740 (Tex. App.— El Paso 2018, no pet.). "However, signatures are not always required in order to demonstrate contract formation." *Id*. (citing *Wright v. Hernandez*, 469 S.W.3d 744, 756– 57 (Tex. App.—El Paso 2015, no pet.) (holding that the presence or absence of signature is relevant to determining intent to be bound but is not necessarily dispositive)). Texas courts have held that if an employee receives proper notice of an arbitration agreement, the employee's decision to show up to work thereafter demonstrates the employee's consent to arbitrate employment disputes. *In re Halliburton Co.*, 80 S.W.3d 566, 568– 69 (Tex. 2002) (orig. proceeding). "While this maneuver spares an employer from having to get an employee's physical signature on an arbitration agreement as a prerequisite to arbitral forum access, this practice is not without risk, as relying on implied consent by notice can create potential fact issues on formation that can undermine an arbitration agreement's validity more easily than would a physical signature indicating that an employee affirmatively assents to arbitration." *Alorica*, 569 S.W.3d at 741.

Such "fact issues" arose here. *See id*. Perez did not sign her online employment application. HEB, however, provided uncontroverted testimony from HEB Human Resources Technology Advisor Chris Shaver that established that Perez had to review and consent to the "Agreement to Arbitrate" before submitting her final work application for consideration. And the record shows that Perez clicked "yes" to the question asking, "I understand and agree to the "General Agreement", "Agreement to Arbitrate", "Electronic

5

Signature" and "Additional Agreements" as stated in the H-E-B Employment Application."

The foregoing evidence establishes that Perez had proper notice of the arbitration clause. *Id*.

## 2. Statute of Frauds

Perez also argues that her failure to sign the document means that the arbitration agreement did not meet the statute of frauds. The Texas Business and Commerce Code codifies Texas's law on the statute of frauds. It provides that certain promises or agreements are not enforceable unless they are in writing and "signed by the person to be charged with the promise or agreement . . . ." TEX. BUS. & COM. CODE ANN. § 26.01(a)(1)-(2). That section, however, only applies to the following:

    (1)   a promise by an executor or administrator to answer out of his own estate for any debt or damage due from his testator or intestate;

    (2)   a promise by one person to answer for the debt, default, or miscarriage of another person;

    (3)   a prenuptial agreement or an agreement on consideration of nonmarital conjugal cohabitation;

    (4)   a contract for the sale of real estate;

    (5)   a lease of real estate for a term longer than one year;

    (6)   an agreement which is not to be performed within one year from the date of making the agreement;

    (7)   a promise or agreement to pay a commission for the sale or purchase of: an oil or gas mining lease; an oil or gas royalty; minerals; or a mineral interest; and

    (8)   an agreement, promise, contract, or warranty of cure relating to medical care or results thereof made by a physician or health care provider as defined in Section 74.001, Civil Practice and Remedies Code.

6

*Id*. § 26.01(b).

Notably, arbitration agreements are not included in the statute of frauds.   *See id*. The only case Perez cites claiming that arbitration agreements must meet the statute of frauds is *Bryant vs. Ellis' Administrator*, a Texas case that pre-dates the FAA by almost fifty years.   49 S.W. 234, 235 (Tex. 1899, no writ); *see also* 9 U.S.C.A. §§ 1–16 (establishing in the statute's legislative history that the FAA was passed in 1947). Based on the plain language of § 26.01, we conclude that the arbitration agreement was not subject to the statute of frauds.

Because we conclude that Perez had notice of and agreed to the arbitration agreement, and because the agreement was not subject to the statute of frauds, we sustain HEB's first issue.

## B.    Perez Ratified the Arbitration Agreement

In the alternative, HEB also contended that Perez ratified her agreement to arbitrate when she signed and dated an "Authorization for Medical Information and Acknowledgment of Arbitration Election Process Forms" and later accepted benefits under HEB's Work Injury Benefit Plan.

### 1.  Standard of Review and Applicable Law

"Ratification is the adoption or confirmation by a person, with knowledge of all material facts, of a prior act that did not legally bind that person and that the person had the right to repudiate."  *Mission Petroleum Carriers, Inc. v. Kelley*, 449 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 329 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied) ("Ratification occurs if

7

a party recognizes the validity of a contract by acting or performing under the contract or by otherwise affirmatively acknowledging it, or, in other words, 'if a party by its conduct recognizes a contract as valid, having knowledge of all relevant facts, it ratifies the contract.'"); *see also In re Weeks Marine, Inc.,* No. 14–09–00580–CV, 2009 WL 3231570, at *3 (Tex. App.—Houston [14th Dist.] Oct. 8, 2009, orig. proceeding) (mem. op.). "Ratification may be express or implied from a course of conduct." *Mission Petroleum Carriers*, 449 S.W.3d at 553. An act inconsistent with the intent to avoid a contract ratifies the contract. *See id.* Once a party ratifies a contract, she may not later withdraw her ratification and seek to avoid the contract. *See id.* "The relevant inquiry focuses on the actions taken by the party seeking to avoid the contract once that party became fully aware that his prior act did not legally bind him." *Id.* A party cannot avoid an agreement by claiming there was no intent to ratify after she has accepted the benefits of the agreement. *See id.* at 553–54. Ratification may be determined as a matter of law if the evidence is not controverted or is incontrovertible. *See id.* at 554.

### 2. Analysis

The record shows that Perez signed an "Authorization for Medical Information and Acknowledgement of Arbitration Election Process Forms" after her workplace accident. These forms required the signee to acknowledge that "[i]f I have elected comprehensive coverage, or was hired after 2/21/05, I confirm my agreement to arbitrate disputes relating to my injury." Perez signed and dated these forms on February 26, 2013. Perez later accepted $11,460 in benefits under the HEB Work Injury Benefit plan. When she accepted these benefits, she again agreed to be bound by arbitration. The Work Injury

8

Plan stipulates that "any actual payment of benefits under this Plan to or with respect to you will serve as further consideration for and represent further agreement to the provision of this arbitration requirement."

Perez's express actions, by signing and dating forms acknowledging the arbitration clause and later by accepting benefits under a policy requiring arbitration, illustrate her ratification of the arbitration agreement. *See Mission Petroleum Carriers, Inc.*, 449 S.W.3d at 553–54; *see also Ohrt*, 398 S.W.3d at 329. Having acknowledged the arbitration clause through her signature and actions, she cannot now withdraw her ratification and seek to avoid the arbitration contract. *Id*. We sustain HEB's second issue.

## C. Perez's Defenses to Arbitration

Perez, in her response, asserted two defenses to arbitration: waiver and unconscionability. We address each issue in turn.

### 1. Waiver

Perez argues that HEB waived its right to arbitration. A party asserting waiver as a defense to arbitration must prove that (1) the other party has substantially invoked the judicial process, which is conduct inconsistent with a claimed right to compel arbitration, and (2) the inconsistent conduct has caused her to suffer detriment or prejudice. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511–12 (Tex. 2015) (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 593–94 (Tex. 2008)); *see also LaLonde v. Gosnell*, ___ S.W.3d ___, ___, 2019 WL 2479172, at *3 (Tex. June 14, 2019). This is a high burden to reach, as the law favors and encourages arbitration. *See G.T. Leach*, 458

9

S.W.3d at 511–12.

Whether a party has substantially invoked the judicial process depends on the totality of the circumstances. *Id*. (citing *Perry Homes*, 258 S.W.3d at 589–90). Courts consider several factors in this analysis, including:

- how long the party moving to compel arbitration waited to do so;

- the reasons for the movant's delay;

- whether and when the movant knew of the arbitration agreement during the period of delay;

- how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

- whether the movant requested the court to dispose of claims on the merits;

- whether the movant asserted affirmative claims for relief in court;

- the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction);

- the amount of time and expense the parties have committed to the litigation;

- whether the discovery conducted would be unavailable or useful in arbitration;

- whether activity in court would be duplicated in arbitration; and

- when the case was to be tried.

*Perry Homes*, 258 S.W.3d at 590–91.

The record reveals that HEB timely responded to Perez's lawsuit and asserted its right to arbitration in its Original Answer. One month later, HEB filed its Motion to Compel Arbitration and Stay All Proceedings. Although Perez is correct in pointing out that the

10

hearing on the Motion to Compel Arbitration did not take place until nearly three years after the motion had been filed, we note that the reason HEB passed its initial hearing was at Perez's own request. In the parties' Rule 11 Agreement, Perez agreed to withdraw all of her discovery requests, which included interrogatories and requests for production, admission, and disclosure, as well as allow HEB to participate in her deposition, if HEB agreed to pass on its hearing for the Motion to Compel Arbitration. The agreement also confirmed that the participation in the deposition would not constitute "waiver of the arbitration agreement."

HEB did not propound any discovery during the pendency of the suit, nor did it seek affirmative relief from the trial court. The clerk's record reveals that the trial court conducted two docket control conferences. HEB participated in these conferences but otherwise did not avail itself of the legal process. We find these facts similar to other cases where Texas appellate courts have concluded that there was no waiver despite some participation in legal proceedings. *See, e.g., G.T. Leach Builders, LLC*, 458 S.W.3d at 511–12 (finding no waiver where a party filed motions to transfer venue, to designate responsible third-parties, for continuance, to quash depositions; designated experts; and filed a motion to compel arbitration three months after a motion to transfer venue was denied); *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 694 (Tex. 2008) (holding no waiver where defendant waited eight months to pursue arbitration demand while discussing a trial setting and propounding discovery); *Ellis v. Schlimmer*, 13-09-00426-CV, 2011 WL 3821969, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2011, no pet.) (mem. op.) (concluding no waiver when defendants waited ten months

11

before filing motion to compel arbitration, had conducted discovery, retained experts, and plaintiffs had spent an alleged $11,000 in litigation expenses). In this case, HEB immediately asserted its right to arbitration in its answer and in its motion to compel filed two months after Perez filed suit. In light of the foregoing, we conclude that HEB did not substantially invoke the judicial process or waive its right to arbitration.

### 2. Unconscionability

Perez also argues that arbitration is unconscionable because she cannot afford to pay filing fees. By affidavit testimony, she avers that "if my case is allowed to go into arbitration I will be forced to drop my claim due to my lack of funds for said arbitration."

### a. Applicable Law

"Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law; there is nothing *per se* unconscionable about an agreement to arbitrate employment disputes and, in fact, Texas law has historically favored agreements to resolve such disputes by arbitration." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

The party opposing arbitration bears the burden to show that the costs of arbitration render it unconscionable. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 893 (Tex. 2010). When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000). Texas courts require "some evidence that a complaining party will likely incur arbitration costs in such an amount as to deter

enforcement of statutory rights in the arbitral forum." *In re Poly–Am.,* 262 S.W.3d at 356; *accord In re U.S. Home Corp.,* 236 S.W.3d 761, 764 (Tex. 2007); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 756–57 (Tex. 2001). Furthermore, that evidence must be sufficient. *In re Olshan*, 328 S.W.3d at 895. "For evidence to be sufficient, it must show that the plaintiffs are likely to be charged excessive arbitration fees." *Id*. "While we do not mandate that claimants actually incur the cost of arbitration before they can show its excessiveness, parties must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id*. "Evidence of the 'risk' of possible costs of arbitration is insufficient evidence of the prohibitive cost of the arbitration forum." *Id*. (citing *Green Tree,* 531 U.S. at 91).

### b. Analysis

Perez testified by affidavit that she is unable to pay the American Arbitration Association (AAA) filing fees of $4,000 to $11,200. She submitted a filing fee chart from the AAA's "Commercial Arbitration Rules and Mediation Procedures" illustrating these fees. This case, however, is not a commercial lawsuit—it is an employment dispute. The parties' Agreement to Arbitrate provides that the parties would be bound by the "AAA's national rules for the resolution of employment disputes."

In its appeal, HEB posited that Perez's filing fees under the appropriate AAA framework would only be $300, not the $4,000-$11,200 Perez had estimated. Perez rightly points out in her response that this $300 filing fee information was not presented to the trial court. However, as the party contesting arbitration on the grounds of

13

unconscionability, it was Perez's burden to provide reliable evidence of costs, not HEB's. *See Green Tree,* 531 U.S. at 92. Perez instead provided irrelevant cost estimates for arbitrating a commercial dispute instead of an employment one.

Perez attached a sworn affidavit in her response to HEB's motion to compel arbitration. In her affidavit, she testified that she works twenty-eight hours a week as a health care provider for her father, earning $10.00 per hour. She also testified that "if [her] case is allowed to go into arbitration [she] will be forced to drop [her] claim due to [her] lack of funds for said arbitration." Based on the record before us, Perez's unrelated cost chart for "Commercial Arbitration Rules and Mediation Procedures" and her sworn affidavit regarding the "risk of possible costs of arbitration" is not sufficient to prove that the arbitration agreement was unconscionable due to cost. *See In re Olshan*, 328 S.W.3d at 895. We overrule this issue.

## IV. CONCLUSION

We reverse the decision to deny HEB's motion to compel arbitration and remand this case to the trial court for further proceedings consistent with our opinion.

LETICIA HINOJOSA
Justice

Delivered and filed the
25th day of July, 2019.

14