

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ALORICA, Individually and d/b/a ALORICA, INC., | § § | No. 08-18-00008-CV |
| Appellant, | § | Appeal from the |
| v. | § | 327th District Court |
| MARY LOU TOVAR, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2016-DCV-3173) |

# **O P I N I O N**

Mary Lou Tovar sued her former employer Alorica following her termination, alleging disability discrimination and workers' compensation retaliation claims. Alorica moved to arbitrate Tovar's claims, asserting that the company's electronic records showed that Tovar received notice of a mandatory arbitration agreement and accepted its terms both explicitly and impliedly by continuing to show up for work. In a sworn affidavit and again at a *Tipps*[1] hearing, Tovar denied ever seeing, receiving, or agreeing to the terms of the arbitration agreement. The trial court, crediting Tovar's evidence over that of Alorica, denied the motion to compel arbitration. Alorica appealed, asking this Court to credit the company's electronic records over Tovar's sworn denial

---

[1] *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (1992).

as a matter of law and compel arbitration on that basis.

We cannot do so. Our prior decision in *Kmart Stores of Texas, L.L.C. v. Ramirez*[2] controls here. The trial court was presented with conflicting evidence regarding contract formation. Its judgment resolving this formation dispute rested on legally sufficient evidence, meaning that we cannot disturb the decision. We will affirm the order denying the motion to compel arbitration.

## BACKGROUND

In response to Alorica's motion to compel arbitration, Tovar contested the existence of an arbitration agreement and submitted a sworn affidavit to the trial court. In her affidavit, she testified that she had never seen or heard of the arbitration agreement at issue in this case until January 2017, after she filed suit. She averred that she was never presented with the arbitration agreement either in paper or electronic form, nor was she informed by anybody that she was subject to an arbitration policy. She denied signing or clicking anything to indicate that she knew, agreed to, or received notice of the agreement. She testified that if she had known of the arbitration agreement, she would not have signed it and did not and does not agree to its terms.

In response to Tovar's filing, the trial court forewent summary disposition and held two *Tipps* hearings.[3] At the first hearing on January 9, 2017, Tovar gave live testimony. She acknowledged having used the company's internal email system before but she again denied receiving notice of the arbitration agreement at all and stated that she would have never agreed to the document. When asked on cross-examination if it was possible that she had received it and did not remember, Tovar replied, "No. I never received it." She testified that she had not given out her login credentials to anyone and that she did not know why Alorica's records reflected she

---

[2] 510 S.W.3d 559 (Tex.App.--El Paso 2016, pet. denied).
[3] A non-movant who submits evidence raising an issue of material fact as to the existence of an arbitration agreement can trigger an evidentiary hearing. *See In re DISH Network, L.L.C.*, No. 08-17-00161-CV, 2018 WL 5276720, at *4-*5 (Tex.App.--El Paso Oct. 24, 2018, orig. proceeding).

received notice.

During summation at the first hearing, Alorica referenced an affidavit attached to its motion to compel arbitration that was written by Susannah Lawler, Alorica's regional senior human resources manager, in which Lawler vouched for a series of substantive and demonstrative screenshots taken from the EIS portal purportedly showing that Tovar's login credentials were used to access a messaging center and view the arbitration agreement. At the end of the hearing, the trial court permitted limited discovery related to "this procedure for the process of sending out these forms," allowing Lawler to be deposed, and invited supplemental briefing. The parties indicated that they agreed to additional discovery on the limited issues identified by the trial court.

At the second *Tipps* hearing on December 5, 2017, Alorica called Venu Thadisetti as a live witness. Thadisetti was Alorica's solution development manager based out of an office in Florida, where he worked with information systems, web applications, and CI systems that were part of Alorica's overall I.T. structure. Thadisetti explained that Alorica used an application known as the Employee Information System (EIS) to keep track of timekeeping, as an internal messaging platform, and for hosting training and coaching tools. Thadisetti identified Exhibit 1 as being a screenshot of an EIS inquiry for Mary Tovar's information. Thadisetti explained that all Alorica employees had an employee ID number identifying the employee across different Alorica systems, as well as a user ID number used internally within the EIS portal. Tovar's employee ID number was 403727 and her user ID for the EIS portal was 1003373.

Thadisetti identified Exhibit 2 as a screenshot he took of log activity for Tovar's user ID between April 26, 2014 and April 27, 2014, which included the user name, the domain name, the computer that was used, the website that was accessed, and the date and time it was accessed. According to Thadisetti, the log activity showed that Tovar's user ID was entered on a specific

3

computer located within El Paso (ELP-37183) to start a session. During that active login session, Tovar's credentials were used to sign in to the EIS system. Thadisetti testified that records showed the user attempted to access a page related to overtime pay, but that the EIS system automatically redirected the user to the portal mailbox where the mandatory arbitration agreement would have been contained in a message. Navigation away from the page to access other EIS functions was not possible unless the user first acknowledged the agreement. Based on Thadisetti's records review, the user attempted to navigate away from the page several times before finally clicking through the acknowledgment. The acknowledgment process required clicking through two screens. The first screen had the arbitration agreement with a link that stated "I have read and understand this Company Policy" at the bottom of the page. After clicking the acknowledgement link, the user was directed to a second screen with a link that stated, "I understand this Company Policy and agree to its terms and conditions." Clicking through these screens would automatically update Alorica's electronic records. Thadisetti believed that the user was Mary Tovar based solely on the fact that her login credentials were used and by policy nobody at Alorica had access to employee passwords, but he admitted on cross-examination that he had no personal knowledge of whether the user was in fact Mary Tovar.

At the conclusion of the second hearing, the trial court denied the motion to compel arbitration. This interlocutory appeal followed.

## DISCUSSION

In its sole appellate issue, Alorica contends the trial court erred by refusing to compel arbitration. We disagree.

### *Standard of Review and Applicable Law*

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration

agreement and (2) show that the claims asserted are within the scope of the agreement. *Delfingen US-Tex., L.P. v. Valenzuela,* 407 S.W.3d 791, 797 (Tex.App.--El Paso 2013, no pet.). The parties do not dispute that if this arbitration agreement is valid, it covers the claims subject to this litigation. We limit our discussion accordingly.

While Texas and federal law both strongly favor arbitration, "a valid agreement to arbitrate is a settled, threshold requirement to compel arbitration[,]" and "when we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of [a] sufficient showing that the parties entered into a valid and binding arbitration agreement." [Internal citations and alterations omitted]. *Kmart Stores of Tex.*, 510 S.W.3d at 564. "The burden of establishing an arbitration agreement's existence is evidentiary and runs with the party seeking to compel arbitration." *Id*. at 565. "Whether the parties agreed to be bound to an arbitration agreement is a contract formation question we review *de novo*, deferring to the trial court's findings of historical fact as between the parties so long as those determinations are supported by evidence." *Id*.

### *Analysis*

A signature, electronic or otherwise, is generally deemed to be sufficient to show assent to an arbitration agreement. However, signatures are not always required in order to demonstrate contract formation. *Wright v. Hernandez*, 469 S.W.3d 744, 756-57 (Tex.App.--El Paso 2015, no pet.)(presence or absence of signature is relevant to determining intent to be bound but is not necessarily dispositive). In Texas, an employer may condition an at-will employee's continued employment on assent to binding arbitration, even if the employee was initially hired in the absence of an arbitration agreement. *See In re Halliburton Co.*, 80 S.W.3d 566, 568-69 (Tex. 2002)(orig.

5

proceeding).  So long as an employee receives proper notice of the arbitration agreement, our courts will infer that the employee's decision to continue showing up for work thereafter demonstrates the employee's consent to arbitrate employment disputes.  *Id.*; *Firstlight Federal Credit Union v. Loya*, 478 S.W.3d 157, 167-70 (Tex.App.--El Paso 2015, no pet.).  While this maneuver spares an employer from having to get an employee's physical signature on an arbitration agreement as a prerequisite to arbitral forum access, this practice is not without risk, as relying on implied consent by notice can create potential fact issues on formation that can undermine an arbitration agreement's validity more easily than would a physical signature indicating that an employee affirmatively assents to arbitration.  *Kmart Stores of Tex.*, 510 S.W.3d at 570-71 (outlining risks).

This is not the first time this Court has been asked to find that an employer's electronic records indicating that an employee received notice of a *Halliburton*-style arbitration agreement conclusively establish notice as a matter of law.  We recognized in *Firstlight* that an employee could be bound to arbitrate claims if the employee received electronic notice of an arbitration agreement and the employee continued showing up for work thereafter.  *Firstlight Fed. Credit Union*, 478 S.W.3d at 168-69.   In *Firstlight*, the employee did not contest the issue of notice, which made the arbitration agreement binding as a matter of law.  *Id.*  By contrast, in *Kmart Stores of Texas, L.L.C. v. Ramirez*, we declined to hold that a corporation's electronic records showing the purported log-in and viewing of a document by an employee conclusively established notice sufficient to create a *Firstlight* agreement in light of the employee's sworn statements that she never saw the arbitration agreement at issue.  *Kmart Stores of Tex.*, 510 S.W.3d at 569-70.  Instead, we found that the conflict between the employer's records and the employee's sworn denial created a fact issue on contract formation, meaning that the trial court could find in either the employer or

6

employee's favor.  *Id*.  While we noted that we were "not unsympathetic" to "concerns that if we credit[ed] the trial judge's findings" that the strength of many electronically noticed *Halliburton*-style arbitration agreements could be undermined by an employee's sworn denial should the trial court believe the employee, under the legal sufficiency standard of review, that was "a gamble every employer takes any time it foregoes an employee signature and instead hangs its hat on a fact finder's determination of whether it met *Halliburton*'s notice requirements."  *Kmart Stores of Tex.*, 510 S.W.3d at 570.

After full merits briefing, the Texas Supreme Court denied Kmart's petition for review on February 17, 2017, after the date of the final *Tipps* hearing in this case.  *See Kmart Stores of Tex. v. Ramirez*, No. 16-0306 (order)(Tex. Feb. 17, 2017), *available online at* http://search.txcourts.gov/Case.aspx?cn=16-0306&coa=cossup.  To our knowledge, no subsequent decision from the Texas Supreme Court or this Court has abrogated *Kmart*.  Alorica also does not ask us to overturn *Kmart*.  Therefore, under the principles of stare decisis, *Kmart* remains binding in this Court.  The only question remaining before this Court is whether the facts of this case bring it inside *Kmart*'s ambit.

At first blush, the similarities between this case and *Kmart* are striking.  Both cases involve an employee's sworn denial of notice or login and an employer's proffer of electronic records seeming to indicate otherwise.  Alorica attempts to distinguish *Kmart* in several ways, none of which we find persuasive.  First, Alorica argues that the quality of evidence in this case is different because *Kmart* involved an employee giving live testimony that was contravened by an affidavit from a human resources professional, whereas here, Alorica offered live testimony from its in-house I.T. professional that it contends was clear, direct, and positive and rebutted Tovar's live sworn denial of notice as a matter of law.  But the dispositive issue in *Kmart* did not necessarily

7

hinge on live testimony-versus-affidavit; we simply held that the employer-witness's testimony vouching for electronic records raised more than a scintilla of evidence of notice, and that the employee-witness's sworn denial of notice raised more than a scintilla of evidence of no notice, thereby creating a fact issue on contract formation that was ripe for trial court resolution either way. *Kmart Stores of Tex.*, 510 S.W.3d at 570-71 (holding in light of conflicting evidence that neither side could establish its position as a matter of law and deferring to the trial court's credibility and demeanor assessments). Here, we have the same type of conflicting evidence as we did in *Kmart*.[4] The distinction in the form with respect to how the evidence is presented is not material.

Second, Alorica maintains that Thadisetti "testified at length" about the security measures used by Alorica's I.T. department. However, it is not clear from Alorica's briefing how Alorica's I.T. security set-up differed at all from the one employed in *Kmart*. Alorica does point out that Thadisetti testified that in order to access EIS, a user would have to use an Alorica computer and thereby pass through two log-in hurdles: first, the user must be logged in to a computer on Alorica's network generally, which requires a unique domain-level user-ID/password combination (log-in point #1); and second, the user must also specifically access the EIS portal using a second, unique user-ID/password combination (log-in point #2). Alorica seems to distinguish *Kmart*, which turned on the use of one set of log-in credential to access an online portal, by arguing that in this case, an employee needed to use two sets of log-in credentials—domain-level credentials and portal-level credentials—to access an online portal, meaning that the security procedures that Alorica implemented were more stringent than those in *Kmart*.

---

[4] Although the parties' briefs largely analyzed this as an implied consent *Firstlight* agreement, the outcome here under these facts would be the same regardless of whether we treated this as an agreement that was expressly accepted by clicking the link on the second screen, as Tovar unequivocally denied receipt, acknowledgement, or acceptance of the agreement under oath.

Although Alorica does not explicitly state such in its brief, by directing our attention to this testimony, Alorica appears to imply that the two sets of login credentials show that the I.T. department implemented a variation of a widely-implemented security procedure known as two-step authentication or two-factor authentication to ensure identity integrity. "Multifactor authentication is a process by which online accounts and services confirm the identity of a user through a series of verification steps (known as 'factors'), each of which provides additional evidence that the user is who she claims to be." Kyle Swan, Comment, *Multifactor Authentication: Access Control Made Easy?*, 2 GEO.L.TECH.REV. 123, 124 (2017). The three primary factors used in this procedure are knowledge factors (something the user knows, e.g., log-in credentials), (2) possession factors (something the user has, e.g. access cards), and (3) inherence factors (something the user is, e.g. biometric data). *Id.* at 124. While variation between types of factors can lead to more effective protection, a security system may use multiple forms of authentication within one factor-category type to ensure identity. *Id.* at 124. "Each additional factor required for authentication significantly increases protection." *Id.* Examples of two-factor authentication include entering a password and then a passcode texted to a mobile phone (both knowledge factors) to access a Gmail account; entering a debit card (possession factor) and a PIN number (knowledge factor) into an ATM to receive cash from a bank account; or gaining access to information on an iPhone (possession factor) by unlocking it with a fingerprint, facial recognition, or other biometric factor (inherence). *Id.* at 125; *see also* Eric Griffith, *Two-Factor Authentication: Who Has It and How to Set It Up,* PC MAGAZINE (Feb. 16, 2018, 2:56 P.M.), https://www.pcmag.com/feature/358289/two-factor-authentication-who-has-it-and-how-to-set-it-up (providing examples); *Multi-factor authentication*, WIKIPEDIA, https://en.wikipedia.org/wiki/Multi-factor_authentication (last visited Nov. 14, 2018).

We express no opinion on whether the use of two-factor authentication is necessary or sufficient to defeat an employee's sworn lack-of-notice claim as a matter of law because there is no legally sufficient evidence showing that two-factor authentication actually occurred in this case. As we understand it, two-factor authentication is conditional, and while Thadisetti testified that EIS could only be accessed on an Alorica network, he never testified that the use of a unique user-ID/password combination to access the EIS portal at the second log-in point was conditioned on the correct entry of another unique user-ID/password combination granting a specific user access to an Alorica computer at the first log-in point. In other words, there is no evidence that the unique log-in credentials needed to access a computer connected to Alorica's network as "Mary Tovar" for general purposes needed to be entered before the second set of unique log-in credentials granting the user access to the EIS portal as "Mary Tovar" would be accepted. There is no testimony that the two sets of log-in credential are used *conjunctively* and *sequentially*. As such, we cannot pass on the question of two-factor authentication.

Nevertheless, there is evidence that during an active session initiated with Mary Tovar's login credentials, the EIS portal was accessed using another set of Mary Tovar's login credentials. However, Mary Tovar made several sworn denials of ever receiving notice of the agreement or clicking to agree with an arbitration agreement in a trial court. Alorica insists that in order for a court to credit Tovar's "self-serving" testimony over Thadisetti's testimony, Tovar must also explain how it was that her login credentials could have been used by someone else. That is not currently required under Texas law. We declined to adopt that extra requirement in *Kmart*, and we will not impose that requirement today. Whether the employee's sworn denial is credible in light of the circumstances is a question for the trial court, not this Court. As we noted in *Kmart*, a sworn denial has traditionally been sufficient to create a fact issue triggering a *Tipps* hearing as to

10

whether an apparently valid signature acknowledging receipt of an arbitration agreement has been forged in the paper context. *Kmart Stores of Tex.*, 510 S.W.3d at 569, *citing Gunda Corp., L.L.C. v. Yazhari*, No. 14-12-00263-CV, 2013 WL 440577 (Tex.App.--Houston [14th Dist.] Feb. 5, 2013, no pet.)(mem.op.)(reversing summary arbitration order and remanding for factual hearing where employer had a purported signed copy of arbitration agreement that employee denied ever seeing or signing). We extended the same principle by analogy to electronic signatures in *Kmart*, and we continue to stand by that logic. Indeed, while the Texas Uniform Electronic Transactions Act permits the use of electronic signatures and other means to transact business, it does so against the backdrop of Texas common law regarding contracts, and generally speaking brings electronic transactions within the common law contracting framework rather than supplanting that framework. *See*, *e.g.*, TEX.BUS.&COM.CODE ANN. §§ 322.003(d)("A transaction subject to this chapter is also subject to other applicable substantive law"); 322.005(e)("Whether an electronic record or electronic signature has legal consequences is determined by this chapter and other applicable law"); 322.006(1)(TUETA should be interpreted "to facilitate electronic transactions consistent with other applicable law"); 322.009(a)-(b)(electronic record or signature is attributable to a person if it was that person's "act" which like that of a physical signature is determined from context and surrounding circumstances "and otherwise as provided by law"). Thus, applying the analogy we set down in *Kmart*, we believe that Tovar's sworn denials here are sufficient under these circumstances to create a fact issue that the trial court could resolve in her favor after a *Tipps* hearing, even if this case involves two sets of non-conditional, non-sequential login credentials rather than one.

The remainder of the arguments Alorica advances were addressed in *Kmart*. As we read Alorica's brief, Alorica essentially asks us to re-weigh the evidence and find that the quality of

11

evidence it furnished outweighs Tovar's sworn denial of notice. But as we observed in *Kmart*, it is not clear that this Court is actually able to engage in a factual sufficiency review of *Tipps* hearing evidence. We are only explicitly permitted to use the legal sufficiency standard in measuring fact questions related to arbitration. *Kmart Stores of Tex.*, 510 S.W.3d at 570. And under the standard, we must uphold the trial court's decision if there is some evidence more than a scintilla to support it *unless* Alorica establishes notice *as a matter of law*. Here, as in *Kmart*, the employee's sworn denial of notice was legally competent evidence, and here, as in *Kmart*, Alorica failed to establish notice as a matter of law. At best, the conflict created a fact issue ripe for trial court resolution. We cannot disturb that resolution, especially given how much it hinges on the trial court's evaluation of credibility and demeanor. We continue to "trust in the ability of the lower courts to resolve factual discrepancies, to discern the truth, and to ferret out dishonest or perjurious attempts by employees to avoid the ramifications of failing to read employer notices." *Id*. at 571.

Alorica also directs this Court's attention to a handful of federal district court cases in which judges faced with the same factual dilemma presented here decided in favor of the employer, not the employee. *See generally*, *e.g.*, *Holmes v. Air Liquide USA, L.L.C.*, No. H-11-2580, 2012 WL 267194 (S.D.Tex. Jan. 30, 2012)(memo. & order), *aff'd,* No. 12-20129, 498 Fed.Appx. 405 (5th Cir. 2012);[5] *Walker v. Tao Operating, L.L.C.*, No. 1:13-CV-619, 2014 WL 11904577 (E.D.Tex. Aug. 14, 2014); *Washington v. Sears Logistics Servs., Inc.*, No. 3:13-CV-3060-L, 2014 WL 2159253 (N.D. Tex. May 23, 2014); *Grynko v. Sears Roebuck & Co.*, No 1:13 CV 2482, 2014 WL 66495 (N.D. Ohio Jan. 6, 2014). As we stated in *Kmart*, these "federal district cases only demonstrate how various trial judges resolved evidentiary discrepancies in the record[,]" but they

---

[5] On appeal before the Fifth Circuit, the employee in *Holmes* abandoned any challenges to the district court's findings that the agreement was valid and instead argued that provisions of the Dodd-Frank Act altered the ability to arbitrate certain classes of claims. *See* 498 Fed.Appx. at 406. The Fifth Circuit thus did not rule on the formation issue.

12

"do not address the dispositive appellate issue of whether the employee's denial of notice raised a fact issue ripe for trial court resolution" or otherwise "answer whether we as a Texas appellate court *must reverse* the trial court's decision here, when the judge decides under this set of facts that the scales tip towards the employee" rather than the employer. [Emphasis added]. *Kmart Stores of Tex.*, 510 S.W.3d at 569. *Kmart* specifically deals with the issue of appellate resolution, and under stare decisis, it binds us here. The trial court's decision here was proper.

## CONCLUSION

The trial court's decision rested on legally sufficient evidence. Issue One is overruled. The trial court's order denying Alorica's motion to compel arbitration is affirmed.


November 26, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)